Oral argument not to exceed 15 minutes for the defendants, 5 minutes for Meekus, and 20 minutes for the plaintiff. We have Harold Gerlitz for the appellant. Good morning. May it please the court, Harold Gerlitz. If you don't mind, let's just wait for it to get settled. Take your time, Mr. Hurd. You have a big litigation bag. It looks like it's been through some wars, too. I'll say again? That bag looks like it's been through the wars. It's this close before you, Your Honor. Thank you. If we could just let Mr. Kamaker get set up. I'm sorry. Thank you. Thank you. May it please the court, Harold Gerlitz on behalf of Timothy Carpenter. In light of the change of time, I'd like to reserve 4 minutes instead of 3 for rebuttal, if I could do that, please. I have raised a number of issues on behalf of Mr. Carpenter. I'd like to address 2 of those related to the 4th Amendment and the collection of historical cell site data that we have written about in our brief, both the 4th Amendment issue then and In Good Faith. We have argued that the privacy interest created here by the collection of historical cell site data for a period of about 5 months, including thousands of telephone calls and about 13,000 data points from Mr. Carpenter about which agent has testified during the trial, creates a privacy protection under the 4th Amendment in this case and requires a search warrant instead of an order issued under the Stored Communications Act only based upon reasonable grounds instead of probable cause. There were 4 robberies about which the cell phone data was presented in evidence through agent has testimony based upon new technology which has become a tool of law enforcement used with increasing frequency as of that time and since that time, certainly in law enforcement investigation presented in federal court. It reveals where a person is located and that was agent has testimony that he was able to put the location of Mr. Carpenter's cell phone within particular sectors that were identified as the sectors in which the robberies occurred. Cell phone, unlike the tracking devices used in Jones and certainly unlike the cell phone that was used in the Skinner case before this court which was a pay-as-you-go phone and less sophisticated, is not just something that's always with an individual but it is something which is always transmitting voluminous information which as all of the information presented to the court establishes is stored and kept by cell phone providers. Well, at that point, it does seem like this case differs in kind from say Jones or some other cases where the court has recognized a privacy interest in that the governmental activity here isn't rifling through somebody's papers, isn't fixing a GPS device to somebody's property. It is collecting business records held by a vendor with whom a particular person does business. I'm not aware of any case where that activity by the government has been found to be a search. Are you aware of any case where it has? We have submitted a 20HA letter making reference to the Fourth Circuit decision in Graham. We have the Fourth Circuit on the same issue we have here. Fair. Yes. I guess apart from that, I'm really thinking more of the Supreme Court frankly which is where this is probably going. Is there anything in the Supreme Court's Fourth Amendment case law that recognizes this sort of governmental activity, obtaining records from a business vendor who does business with a person, that that is a search? I don't believe that this precise issue has been presented to the Supreme Court. However, in Jones, the concurring opinions address these concerns and speak to what was described in the Warshak case by this court as the inexorable march of technology. It is the increasing use of that technology as described by Justice Alito in Jones that produces the kind of records here that are substantially different than what is described in either the Miller case or the Smith case dealing with the third party doctrine. Just as in the circumstance of Smith dealing with a pen register being compared to the prior use of a telephone operator answering a call and connecting the parties. The circumstance here has made a quantum leap beyond what was decided by the Supreme Court 40 years ago. And I don't believe it's any stretch at all to reach the same conclusion that the court did, the Fourth Circuit did in Graham that in this case these records are created by cell phone providers without the real knowledge of any cell phone user. And they're stored and together they provide information which describes the details of an individual's life from the interior of his house to the course of his travels. I think your point about the march of technology is well taken and I think we have to have a certain modesty in deciding these cases and not purport to lay down some principle for all time. But it does seem that the Supreme Court has never extended Fourth Amendment protection to what we might call metadata. I mean going back to cases where the Supreme Court, I think it was Ex parte Jackson, said the writing on the outside of an envelope is not, there's a distinction between what's on the outside of the envelope and what's on the inside. There's a distinction between typing the numbers into the pen register and the content of the phone call. I mean the court has always drawn a distinction between these external things which are not private, in fact are not private. I mean your client's location was not private. I understand you're putting together a mosaic that would say oh you know you can figure out stuff about him. But the court has made a distinction between these external things that are not private and internal content that is private. And I'm just questioning whether this is the case for us to say you know what we need to go where the Supreme Court has never gone before. Because this cell phone data reveals too much about what, I mean that he went to church on a particular Sunday or something. Why is this so different that we need to have a pretty dramatic departure from Supreme Court doctrine? Well, your Honor, I think that it is not so different. It is a progression from the precedent and the rationale that was used by the court in both the Riley case dealing with cell phone searches, another opinion written by Justice Alito. Riley is exactly what I'm talking about. That's the internal contents of the phone. That is not cell phone tower location data. That's a classic distinction that the court seems to make. Yes. This case is about the internal content of the phone that is transmitted to the tower and retained in records by the cell phone company. It's strictly about the tower which is external. And it's based on his location. He's sitting in a parking lot across from the CVS or something. Your Honor, I'm watching the clock and I would like to also just address a couple significant points I think with regard to the good faith issue which has been raised. I want to hear the good faith because I want to hear your answer to Warshak. But I would like you to help us. If you are proposing a rule, I think in this, as technology marches onward, there is really no way to make a bright line rule. Here, you step over that, we're done. That's not going to work here. But we ought to be able to identify the parameters that could help us define a rule. And I'm struggling to understand what you think it is that would define what you are requesting. We've got the voluntariness of the provision of information. We've got the distinction between an external note like the cell phone tower versus or the sending of an email versus the contents of an email. What factors would we be looking at if we were trying to fashion some sort of a rule that would help us figure out a way to set a continuum? Because my problem is the Supreme Court is not there and we don't want to jump ahead. And yet, are all of the circuit courts going to let more and more data be requested? Years of data be requested? Overlapping cell phone arenas or the smaller photo? I've forgotten. Cells. Yes, cells. As that develops, these courts are finding themselves in the position of seeing huge amounts of data, huge amounts of information from the data that's more and more particularized as technology gets better. So what are you suggesting to us we do to create a way to handle that pending it being taken up by the Supreme Court or the legislature? Well, one criteria that is referred to, and this is a distinguishing factor from the Davis opinion, is the extensive nature of the data that was obtained in this case, the length of time. And I should say as well that it's important to establish that rule related to a good faith issue because of future deterrence where it has not been clear to officers here and Assistant U.S. Attorney what exactly the criteria are that should be applied. It is then the detail of the information described in these opinions and in our brief, I think, and also by the ACLU's amicus brief about the kind of information which can be put together to create a daily record of a person's life experiences, not just on the street, in a car, or in a CVS parking lot, but in their home, in a church, in a bank, or wherever they may conduct their daily affairs. And those, I think, are the essential criteria. That's fine. Go ahead. I interrupted your time. No, I was just going to say to the degree that part of the underpinnings of what you're arguing is that it sort of takes the person by surprise. They're not aware that all this is going on. Isn't that also true of when the government gets video from the gas station where you're pumping gas and you're not really aware that that's happening, but yet they can pinpoint you there. And, you know, we're in a world where you're videoed almost 24-7. And so I don't know that the fact that the individual isn't aware of this really gets you very far in your argument. Your Honor, in that circumstance, certainly the individual is aware that he is exposing himself to the observation of other people. It's like in Skinner. The person was on the highway driving and the agents could surveil the car. It was as it was driving down the road. In the case of the cell phone data that we're addressing here, it is the combination of this information, not the individual call itself, but the record of that call and what it represents together with all of the other data points that are put together of the kind that Agent Hess is going from one case to another now testifying about that allows the government to obtain a record of what a person is doing before they're indicted that furthers their investigation, not only allows them to attempt to prove guilt at a trial. Is this really much more invasive than, say, just somebody being surveilled for a long period of time? I mean, I know it's five months, but I mean, you know, law enforcement often surveils people for extended periods of time. Is this different in kind from the information that law enforcement provides? I mean, I would think surveillance provides more. They see whom they're interacting with, which door they're going in as opposed to within a quarter mile, et cetera. It is a substantially different technique, I believe, because surveillance obviously requires a great deal of effort by law enforcement. They are required to have many people conducting the surveillance for a long period of time. Just like in a Title III wiretap, there would be a requirement for many people to intensively record and detail the information. Here, all that was required was the simple application with no details and only conclusions, in fact, no identification of my client or his telephone number, that he was related to any number in the application at all. I mean, are we just saying, okay, the Constitution requires a certain level of difficulty for the government to get the same information they could get through means that are undisputedly permissible? Do you have to earn it? There is no difficulty here for the government to use a search warrant and to establish probable cause if they have it. I'm talking about surveillance. It's the same information. It's just harder to do. I mean, is that hard, that difficulty, that's what the Constitution requires, you know, put them through the paces? Well, here, the government is able to, after the fact, collect historical information that not only goes to where the person was on an afternoon in their car, but where they were inside a building, inside a house, where they went to sleep at night and where they woke up in the morning. I think that many people would be surprised that the government could obtain that kind of intimate detail about the conduct of an individual's life. I understand what you're saying, but if you back it up in time, all these other techniques were a surprise when they were first revealed. Again, you're back to the march of technology. If this was a surprise now, it won't be for very long if this procedure is upheld. I mean, the world will know that this is possible. That is certainly correct, Your Honor. The world may know, however, it still will permit the government to, with a showing as inadequate as was the case here, to obtain almost five months of detailed information about my client's activities, and I think that that's unprecedented. I would like you to have an opportunity to respond to Warshak and why the good faith, let's assume that it was a certain and unreasonable one, why would good faith not apply here under our precedent? Yes, very directly, it would not apply here because of the third often stated exception to the good faith rule, which is where the affidavit is so lacking in probable cause to render an official belief in its existence extremely unreasonable. The affidavit, the application in this case, there are three of them, and they're not all submitted at the same time, but they remarkably contain almost identically the same information in a boilerplate fashion. There is no detail, there is no mention of my client's involvement, use of information, as compared to what Judge Donald referred to in the Skinner case as a 19-page detailed affidavit. It's just not present here, and it's primarily for that reason, and because I think that the rule ought to serve its constitutional purpose as been crafted by judicial decisions to provide future warning to the governmental entity, the law enforcement team, including assistant U.S. attorneys, that they cannot proceed in this fashion to obtain this kind of detailed information based upon an inadequate showing that doesn't even meet the reasonable cause standard. Thank you, sir. Thank you. Welcome back to the Sixth Circuit. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Nathan Fried-Wessler of the ACLU on behalf of AMICI, and thank you for providing the opportunity to argue this morning. Judge Kattledge, I want to start by addressing the question you posed towards the beginning of Mr. Gerwitz's argument about what precedent we have from the Supreme Court or elsewhere. I think from the Supreme Court itself, the closest case we have is Ferguson v. City of Charleston. That was about the reasonable expectation of privacy in medical records, diagnostic test results held by a hospital. Those are results collected by the hospital. They are, in some sense, metadata about the state of a person's body. But the Court very clearly said there is no reasonable question at all about the expectation of privacy in those records. A warrant is required, and then it went on to conduct a special needs analysis, which is not at issue in this case. When was that case, I confess? That was roughly the late 90s, early 2000s, I believe, but I don't have a year. We cite it in our brief. In Smith and Miller themselves, the Supreme Court provides a mode of analysis for looking at this issue, and they identify two axes, two dimensions of analysis to determine whether the good faith exception, rather, whether the third-party doctrine applies. One, the voluntariness of conveyance, and two, the nature of the information. In other words, the privacy interest in it. And here, the records are quite different than what was at issue in either of those cases, particularly different from the dialed phone number to issue in Smith. There, somebody was inputting, manually inputting in a rotary phone the numbers they were dialing. They saw them on their monthly bill coming back. They knew they were conveying it through a switchboard operator or the automated equivalent. Here, no person is providing their location information voluntarily to the phone company. It's a background process that's running. I mean, surely, you know, a reasonable person is going to realize that their phone is communicating with a tower. We all know that because we run out of range sometimes, right? That may well be, Your Honor. Any sort of, any sentient person is going to realize, okay, you know, the tower probably knows that my phone is here and kind of off we go. That basic level of sort of intuitive understanding that there are towers out there, can you hear me now, isn't enough to get this case past Smith. The location information does not appear on a person's monthly bill. In fact, you cannot get it from your cell phone company even if you ask. The phone company may well know before you do where you are. If I'm visiting Washington, D.C., and I pop out of the metro at a new exit that I've never gone out of, the phone company is going to know where I am before I am. And I think also importantly, for the thousands, hundreds of thousands of Americans who now use smartphones, there's a location privacy setting on those phones that will block third-party applications, Google Maps, et cetera, from knowing where I am. But it has no effect whatsoever, really misleadingly, no effect on the phone company's ability to log and retain my location information. So there's a kind of... But people know when they're in their home range and when they're roaming. I mean... They may or may not, actually. Frankly, I think the voluntary, some of these things, I think, are becoming obsolescent. Third-party voluntariness. But anyway, I don't want to haggle with that. Well, the second dimension is the nature of the information and its privacy interest. And five justices in concurrence in Jones spoke very clearly to the privacy interest in longer-term electronically collected location information. And I'll note that those justices analyzed that case as a third-party doctrine case, essentially. It was about exposure of location over time to the public. And the five justices said this is not the same as the limited information at issue in Knotts and Caro about short-term trips on public streets. Likewise, this is not like this court's decision in Skinner, a less-than-three-day trip just on public highways, a single state-to-state trip. This is months' worth of thousands of location points that, in aggregate, show extraordinarily sensitive parts of a person's life and, in particular, can show information about location in a private space, which under Caro and the Supreme Court's decision in Kelo is also private. Nobody knows whether there's whatever it was, chloroform or something. There's some gas, right, in that Caro case, right? That's right. It was a canister of some kind of drug precursor, I think. This isn't remotely revealing that sort of thing. I do have one question for you. I mean, the government has really created a lot of headaches for itself by having this blanket approach to getting these records. Let's say they figure out, you know what, I mean, the robberies happen on six different dates. We just want the records for those six dates. As a matter of fact, we just want them for a four-hour period on each of those dates. Would you have no constitutional objection to that? I think the constitutional objection there would be much weaker. I think that one place temporarily to draw a distinction is the period of time that a police officer working a normal shift could have visually observed somebody. There's no case support for that, but I think that's in drawing the kind of distinction that Justice Alito talked about. Why would we constitutionalize that? I mean, that's kind of like, why would we constitutionalize the difficulty that the government would have surveilling somebody for a really long time? It's not, respectfully, Your Honor, I don't think it's constitutionalizing the difficulty. It's doing what Justice Scalia and Justice Alito impressed upon the courts in Jones to do, which is to ensure that the level of protection afforded by the Fourth Amendment at the founding remains vital today as technology advances. The records here are quite different, Judge Guy, and this goes to your question about normal person-to-person surveillance. They're different in a couple of respects from what police officers could have done in the past. In one important respect, and Justice Alito spoke to this quite entertainingly in Jones, at the founding, 200-plus years ago, it would have required an immensely tiny constable in the back of a carriage with incredible fortitude, he said, to conduct that kind of what is today GPS surveillance. Here you would have to have, I don't know, a micro-constable inside the cell phone in my pocket staying there for four months, five months, to collect this information. It's also different because here we have the time machine effect. Law enforcement, in fact, never knew that they might want to conduct the surveillance at the time, and instead, today, they decide, oh, I wonder where this person was on a minute-by-minute basis. For Mr. Sanders, this was a location on an average of once every six minutes, every 14 minutes for Mr. Carpenter. I wonder what they were doing at those intervals going back four or five months in time. That's just incredibly new power, and it's not about the difficulty. It's about the level of intrusion that new technologies create and ensuring that the Fourth Amendment's protections remain vital. How would you define the level of intrusion if you were trying to fashion a rule? Is it duration? I think duration is one important dynamic. And do you also think that the idea that this is voluntary is becoming an apposite in the way records are maintained? The Supreme Court has obviously said that voluntariness is one factor. Now, the Court may well revisit this whole framework, and Justice Sotomayor and Jones suggested that it might be time for that, but within that framework as it stands today, voluntariness is important. And these kinds of records, like other kinds of records, and I'll note that the government made this same third-party doctrine argument in the Warshak case about emails held by a third-party service provider. And the Court there talked about voluntariness and also talked at great length about the nature of the information, the privacy interest in it. Now, the Court there did talk about content versus non-content information. Is there a way to draw content versus non-content in this context? Well, I think that saying content versus non-content is really just shorthand for level of privacy interest in the information. There were clear analogies to the interior of a letter or to the contents of a phone call. It made it a relatively easy case. But here, the Court in Jones has at least five justices have sketched out the privacy interest for all of us already, and this, at least longer term, electronically collected location information intrudes on a reasonable expectation of privacy. And I think that in order to fashion a rule that is going to provide protection going forward, it's absolutely essential this Court draw that line in terms of location about the phone in your pocket just equally as the location of your car tracked by a GPS device. Notwithstanding that, you know, it's a collection of business records here and government surreptitious activity in Jones. I mean, if any other factors apart from the nature of the privacy matter, doesn't that matter? It matters, and it is certainly a factor for consideration, but it's not dispositive. And in a series of cases, the Supreme Court and courts of appeals have held that the mere fact alone of disclosure to the public or to a third party doesn't end the inquiry. In Miller and Smith, the Court was clear that that wasn't the basis. They looked at the nature of the records and the voluntariness. The Second and Ninth Circuits, for example, have held that files maintained and created by a lawyer about their client, they are business records in some sense, but they require a warrant. You can't get them with a subpoena. The Supreme Court in Ferguson held about medical records. There's a recent case from the District of Oregon talking about prescription records held by a secure state database. That is sort of quintessential metadata about the medications you're taking that you are in some sense sharing with the doctor and the pharmacist and then with one of these state-tracked databases. That is a relationship with a third party that the law totally recognizes as private. I mean, there's a privilege for that. It'd be like, oh, you told your lawyer, so now there's no Fourth Amendment interest. I mean, but maybe why don't you take 30 seconds and wrap up? Yeah, so just two more points. One is that the government advances an argument about reasonableness of the search, even if there is an expectation of privacy. The Fourth Circuit in Graham gave that argument, I think, exactly as much dignity as it deserves when it dismissed it in a footnote. If there's an expectation of privacy, the warrant requirement per se applies, and here none of the exceptions to the warrant requirement apply. This is not like the Terry line of cases. Okay, so finally I'll just say that, as we've made abundantly clear in our briefs, I think, this court should take account of the advance of technology in this area. These records are from five or so years ago. Today there is a greater volume of records like these being created, not only for calls but for text messages, for data connections like to check into email, and even increasingly for passive registration connections with the phone network that runs totally in the background. The precision of the records is increasing as more cell towers are being erected, including femtocells or microcells, and so the volume and sensitivity of these records is only going in one direction. We know where it's going. So even if this court thinks this is a close case on these facts, I would urge you, respectfully, to err on the side of greater protection, knowing that the records from five years ago are pale in comparison to the sensitivity of the records today. That's well stated. Thank you. Thank you very much, Your Honor. Thank you. We'll hear from Mr. Kammacher. Good morning, Your Honors. Evan Kammacher representing the United States. I would actually like to start for just a second with the good faith argument and then move on to the Fourth Amendment search question. In response to your question, Judge Stranz, on the good faith argument, the only response that Carpenter has here is that the affidavit was insufficient. The affidavit very clearly says that we have somebody who confessed to committing a series of robberies over a period of time and said there were three people primarily involved and 15 others on the periphery. The affidavit then says, it is anticipated that the requested records will assist in identifying and locating the other individuals believed to be involved in the armed robberies. And a sentence later says, the information will therefore provide evidence that Timothy Sanders and Timothy Carpenter are violating Section 1951. It's a very clear affidavit. It doesn't say that your cooperating defendant named them. It does in the sense that it says the cooperating defendant has explained these are the people who have been involved. Has further admitted that others involved with the armed robbery were not taken into custody when he was arrested. Yes, Your Honor. I agree there's no specific sentence that actually says, and then he named these people and then he gave these phones. I think it is very clear from the affidavit that that information is here. More importantly, the same question arose in the Warshak case. And if you read that discussion, the Warshak court upheld the sufficiency of the affidavit even though the name of the suspect did not even appear anywhere in the application. The final point... Let me understand how it would be good faith for an AUSA to apply for this after reading the Warshak case, which has found some portion of the SCA unconstitutional. Yes, Your Honor. The Warshak case held that the good faith analysis applies as long as the Stored Communications Act was neither plainly nor obviously unconstitutional. That court held it was not even clearly unconstitutional as to content because the court had to go through a complicated thicket of analysis to make a decision about whether or not this was a Fourth Amendment search. Clearly in this case, if nothing else, there is a complicated thicket of analysis. Almost every federal court has come down in favor of saying there is no search here. And as I will suggest in a minute, the Supreme Court has made clear that this kind of information is clearly covered by the Third Party Records Doctrine. So it is certainly good faith. Are you referring... I'm struggling with the Third Party Records Doctrine because Miller was in 1976, and it was about bank depositors and bank records. Smith was in 1979, and it was about the pen register and phone dialing. How has the Supreme Court made clear that this kind of business record is simply a business record that ought to be available? Yes, Your Honor. Two answers. The Supreme Court has consistently used and referred to the Third Party Records Doctrine in a variety of different cases, admittedly not involving cell information. But the only justice who has ever actually addressed, coming back to Judge Catholic's opening question, the intersection between the Third Party Records Doctrine and the march of time or the march of technology is Justice Sotomayor in her sole concurring opinion in the Jones case. And she recognizes the tension. And her response to it is, she says, it may be necessary to reconsider the premise of Smith and cites the dissent. She herself recognizes that this kind of material is covered by the current scope of the Third Party Records Doctrine, and maybe the court might need to go back and reconsider that premise. Now, the Supreme Court can do that. Of course, this court has to apply the case law as it now stands. The other cases cited by our opposing counsel are an opposite. Riley, in its very first footnote, says, clearly there was a search of the cell phone. This opinion does not address other circumstances in which the accumulation of digital information might be obtained where there may not have been a search. And later in the opinion, specifically distinguishes the Smith case, basically saying in Smith there was no search, unlike in the Riley case. The Ferguson case that Mr. Nestler refers to, Ferguson was a government search. The facts of Ferguson involved a state-owned hospital working in cahoots with the police to devise a mechanism for unconsented urinalysis of pregnant women. And the majority clearly holds that that is a direct government acquisition of information case, surreptitiously so, not a Third Party Records Doctrine case. Justice Scalia, in his dissent, thinks that there wasn't enough police involvement to make it a government acquisition case. He views it as a Third Party Records Doctrine case, and he applies the Third Party Records analysis. So if next year cell phone towers become more micro towers and you can determine where in your home that person is standing by getting the records that every cell phone company keeps, it seems to me that under your analysis there's no line that can be drawn. I want a year of this defendant, and now you know everything about where the defendant lived, where he slept, where he ate. You see what we're struggling with here. It feels to me that your argument just permits of no limitation at all on the advance of technology and the duration for which you can request. Tell me how your right would be in any way limited based on the privacy interests of a defendant. Yes, Your Honor. If I may, three different responses. First, I agree with the premise of the question that as the Third Party Business Records Doctrine stands today, information that is obtained through the transmission signals of somebody's cell phone as they connect off a local tower, however local that tower is, would qualify as something that once the third party creates a record of it, the government can obtain with a subpoena rather than overline. The second point, however, is this court ought to make a judgment based on its understanding of current technology. There is no clear... Or the facts of this case. Or the facts of this case. Because, Your Honor, technology could easily run in the other direction. Sprint could tomorrow develop a way of boosting the single power of any given cell tower or making it work more efficiently so that it could handle the load of more cell phones with fewer towers or at least the same number of towers. So the notion that inexorably we're moving towards this Orwellian future in some sense, that is entirely speculative. Third, Your Honor, that's why other courts have held that Congress is actually better situated to deal with this kind of question. Absent the Stored Communications Act, this kind of information could be obtained through a general administrative subpoena under the general reasonable standard with no reference whatsoever to the specific defendants involved in a particular case or any other of the specific facts. So you think under the existing law, your position is that merely by alleging a reasonable connection to an ongoing investigation, you can get unlimited cell phone information records from companies right now? Not exactly, Your Honor. I was saying if there were no Stored Communications Act. My point was that Congress has actually ratcheted up the showing that is necessary to get these records, which indicates that Congress is well positioned, if it wants to, to say from among all of the different kinds of third-party records, there may be reasons to treat cell phones differently. Congress has already done that by saying you need a greater showing than is true of a general administrative subpoena. But your position is right now there's not a durational limit on what can be obtained? Not by law, Your Honor. There is a durational limit in the sense that the government can only obtain whatever records cell phone companies choose to keep. I'm not aware of any cell phone company that keeps records for more than I think... But not what you choose to... I'm struggling with what you choose to ask for rather than, for example... You can choose to ask for... For example, four hours on the day of each robbery or a whole day on the day of each robbery. Yes, Your Honor. There's no limitation. You could say I want a year and you would be arguing the very... You've got a year in this case. And if that was your argument... Or you take the time that you actually got, five and six months, that there is nothing problematic even after Skinner's discussion of... I think, what did he call it? Comprehensiveness of the tracking, whether that's unreasonable under the Fourth Amendment. Right now you say six months is reasonable under the Fourth Amendment, period. Your Honor, yes, two things. First, Skinner is distinguishable because Skinner did not involve acquiring information from a third party. It involved the government surreptitiously itself doing the surveillance. So the timing may be very different under those two different scenarios. The Court in many different contexts, not just this one, including even consent doctrine, has made clear that sometimes there is no search simply because of the way information is obtained completely independent of the substance or, for your question, the duration of the information obtained. That's the way the Fourth Amendment works, has always worked. I mean, I know we've talked about it, but what are the leading examples of that that you just described? Well, consent might be one, obviously. Even after Riley, you can consent to have the government search a phone and we're not going to carve out an exemption to the consent doctrine just because you're consenting to a much broader search. But you can give away your privacy interest. You can choose. You can, Your Honor, but that's actually just one application. What non-voluntary... The third party records doctrine is an application of that because you have voluntarily disclosed information to the public. So it's not... I mean, isn't it that the information itself simply isn't private, not that you've... Or maybe it's the same thing, not that you've chose to make private information public. Well, Your Honor, I do kind of think it's the same thing. Coming back to your hypothetical and Judge Kai's question, when you're pumping gas at a gas station, you essentially are putting yourself out there in a way that people can't observe you. Excuse me, Your Honor? When you walk out your front door. That's correct. I will add, by the way, with respect to the quality of the information, and this may be important as well, the only information is what I'll call general vicinity information, at least under current technology. Agent Hess, the only person who testified in the actual record of this case, indicated that even in Detroit, where the towers are closest together, they're basically half a mile to a mile apart, which means that the sector size that these records indicate somebody is in is either a half a mile or a mile in this direction, at 120 degrees, probably that direction, and then closing it off. We're talking about a square mile, maybe a square half mile. This idea that from that information, you can glean whether somebody's inside a space, outside a space, moving in or outside of a space, the information's not granular in that way, the way GPS is. I would add, Your Honor, that many other applications of the third-party records doctrine reveal a great deal of information that might be thought to be sensitive, and in fact reveal a lot more about your location. Credit card information, for example. Every time you're on the road and you swipe a credit card, you are indicating where you are exactly, not just general vicinity, but exactly when you are there, what you are purchasing, the name of the store. Some of this information you may not even know. When I go to a gas station and I swipe my card, I generally don't even know the name of the company of the gas station. I pulled in because I saw the sign that said it was cheaper gas than anything else. I may not know exactly where I am. All of these are third-party business records. The Internet that this Court talked about in Warshak, the same thing. This Court and other courts have held that when you use the Internet, you transmit information about who you are and where you're transmitting from. An Internet protocol... You mean U.S. stuff, you mean? Yes, your Internet... Child pornography. Exactly, exactly. Many investigations about child pornography. I'm sure it's a surprise to some of those folks when the officers show up. I'm sure it is. And it's because when they... So is it on this basis that you think the Fourth Circuit was wrong in Graham? Yes, your Honor. The Fourth Circuit was wrong in Graham. For several... Would you have conceded that there's a circuit split on this issue? Well, I would, your Honor, but I would note that the Court in Graham had to go particularly far to create the split. And let me explain that. The Court in Graham did not say, well, we don't believe that people generally understand that they are connecting to local towers. The Court said, that's not our issue. We think the problem is that people are not aware of the specific tower that their phone is interacting with, and they do nothing to punch in that information. That lack of specificity is true in all of the other examples I just gave. When you run a credit card, you don't do anything digitally or consciously to reveal the time, the location, the nature of the store. When you send an email to somebody, you don't do anything digitally to reveal your own Internet protocol address. My assumption is people generally don't even know what the Internet protocol address is, and yet this Court and other courts have held that that can be obtained via an administrative subpoena, for example, in a child pornography case, because it is part of the Third Business Record. My point is, the Graham Court went way over to a place where, if you followed their reasoning, they would carve out a huge exemption, not just for cell site data, but a huge exemption for all of the other applications of the Third Party Business Records Doctrine that have been routinely used by the government for at least the last 40 years since the Smith and the Miller cases. I have one thing. I don't want to interrupt this interesting discussion on the intellectually most interesting issue in this case, but it comes down to the fact that this is a specific case that we're reviewing. So before you're done, would you address at least briefly the contention that even without this evidence, there's enough in the record to support his conviction? Absolutely, Your Honor. So there were seven different robberies charged. Cell site information is only used in four of those seven. One of them counts seven. Both defendants are caught on video surveillance tapes right across the street from the store as they're engaging in the lookout. So that clearly establishes their physical location, even independent of the cell site-located data. That leaves counts one, three, and nine for Carpenter. For each of those counts, there were eyewitnesses, admittedly accomplice eyewitnesses, that gave quite a bit of detail about exactly where Carpenter was and exactly what he was doing that located him as a lookout in those robberies. But equally importantly, Your Honor, Carpenter and Sanders are charged with aiding and abetting the robberies. So the jury heard evidence not just of their role in the lookout, but in their role in doing a whole bunch of other things. Carpenter is generally involved in planning, recruiting the team, stealing a car or a van to... and, you know, transporting the people there, providing the laundry bags. He did all sorts of other things. So even if one decided, we're going to throw out any evidence whatsoever that indicates he was in the vicinity of the robberies at the time, there is still so much uncontradicted information in this record indicating that he engaged in other acts of aiding and abetting that it is very clear a jury would have to find, beyond a reasonable doubt, that he's guilty. So I think the harmless error doctrine is an alternative way, besides the good faith exception, to saying, if this court disagrees with me that there's a search or doesn't want to reach the issue, the judgment below ought to be affirmed. I would like to add one other issue, which does come back to this question of line drawing, because I understand that this is a really important and a troubling issue. The difficulty is we do understand that modern technology is creating digital information that didn't exist before, and the question is how to handle it. It is not at all clear that the right response is to expand the existing notion of the reasonable expectation of privacy to cover it. As Justice Alito noted in his concurring opinion, which was joined by three others in the Jones case, the advance of technology cuts both ways. On the one hand, we're revealing far more information about ourselves than maybe our parents could have possibly have imagined. On the other hand, we're doing it because there are great advantages to using the technology. He specifically says it may well be that society accepts the trade-off, the diminution in their privacy, precisely because they want all the advantages these modern technological devices can provide. We do see that on the Internet. I clicked on a site for fireplace supplies, and now every time I go to my Gmail, it's like as if I'm a chimney sweep or something. Exactly, Your Honor. This does happen, and that's okay. I understand it. Sometimes I'll buy something from those things. Your Honor, it's the price of doing business on the Internet. It's the price of getting all the wonderful advantages of being able to use the Internet for information and to make purchases. As Justice Alito indicates, it may well be that we just all have a different understanding now of privacy. That's a particular reason why this is an area of the law where a legislative judgment about under what conditions certain kinds of information ought to be obtained is most appropriate. If somebody's going to put a limitation on how many days of information, that would be it. In this case, coming back to Judge Guy's underlying question to focus on the facts of this case, the informer said that he himself was aware and involved in eight different robberies that occurred between December and March. The government ended up charging only four of those robberies, so we already know that there's four uncharged robberies in that same time frame. That explains why the government in this case felt it was important to be able to get the five or the six months' worth of data because it was not sure how many more robberies were committed by the same people and exactly at one point in time in that time span. So the government in this case did not engage in overreaching in any way. For example, did not ask for five years' worth of data or one year's worth of data. Does that even exist? Do we know on this record? I mean, these companies presumably only keep this stuff so long. That is correct, Your Honor. Do we have any idea how long, in this case at least? The record itself does not reflect how long either Metro PCS or T-Mobile keep their own particular records, and I think it does differ company by company. Would that argument suggest that because there are perhaps more unlimited ways to access these documents that then there is incumbent upon you to apply for a subpoena by providing specific information about the person who is the target of that rather than the generic paragraph, and in the end we think we might get something on Timothy Sanders and Timothy Carpenter, but in fact our informant told us that Timothy Carpenter was involved in robberies on this state, this state, and this state, and therefore we're asking you to give us a subpoena for surrounding time periods because we are investigating additional robberies. Your Honor, I agree that the affidavit could have read that way. As I indicated, the affidavit was... The real question is does it need to? No, Your Honor. The court in Warshack specifically addressed, again, exactly the question you're asking and described the nature of the affidavit in that case without any reference whatsoever even to the suspects, let alone to exactly what level of detail of suspicion there was for any of these particular suspects, and the court in Warshack said this still satisfies the statutory standard and that's why the court applied the good faith exception to the exclusionary rule in that particular case. So on the basis of this application, were you able to access telephone numbers for a whole group of people beyond the two people named at the end that you said you might obtain information on? Your Honor, the record doesn't reveal whether or not there were other applications filed for other people involved in the case. Is that what you... No, I'm asking whether on this particular one because you say, here we've got a bunch of different people involved and we think we're going to get some more information on Sanders, Carpenter, and other known and unknown individuals. What I'm asking you is by filing this document were you then free to choose the telephone numbers that you requested information on? Your Honor, the affidavit itself lists specifically the phone numbers if you go to the very first page that are covered by the application. It doesn't randomly allow the government to come back later and say, we want to add another name to the file. So based on this, you got nine telephone numbers. Right, I think there may be a different number of phones for each of the different applications. Okay, thank you. But there is a very specific list of exactly the phone numbers that are going to be... And it could be beyond Sanders and Carpenter for those nine numbers. I don't know the answer to that question. It is true that this application specifically refers to Sanders, Carpenter, and then says something about other individuals. I think that may be referring to the fact that by finding out more about where Sanders and Carpenters were and how they used their phone, one could deduce other information. But, Your Honor, I don't have any more information. Okay, thank you. Thank you, Your Honors. Thank you. In response to Judge Guy's question about harmless error in this case, I think the first thing is to keep in mind the standard, which is that it must be established beyond a reasonable doubt that this evidence did not affect the jury's verdict if it's found to have been received in error in violation of the Fourth Amendment. It's then significant to consider that in this case the government's witnesses were substantially all co-defendants who had entered into plea agreements with the government and testified in return for that kind of immunity and were subject to credibility attacks for that reason. The third reason is that the government's theory in this case was that my client, as well as Timothy Sanders, played a role of being lookouts or organizers but not going into any of the stores so that their role and place in each of these robberies was established only by two means, or three, I guess, in one case. And that is the testimony of these co-defendants, this cell phone information, and in the case of the robbery in Ohio, there was a video from a store, not the store that was robbed, however. So there is no video which places Timothy Carpenter in any of these stores. There was no witness from any of these robberies who identified him as being a participant. The second thing I'd like to address is what is referred to as the affidavit. I don't want to sound like I'm quibbling here about use of terminology, but it's called an application. It's not an affidavit, as is the case in search warrants signed under oath by a law enforcement agent providing his knowledge of the factual basis for the search warrant for which he's seeking from the court. But that relates to... It's, of course, signed by an attorney based upon the attorney's representations that, in this case, Mr. O'Brien knew these things to be true. But what he sets forth, and I just counted them while I was sitting here, 16 lines of information about what is factual. He doesn't mention the use of a cell phone by anyone or any relationship or connection of my client or Mr. Sanders to any of these events in any way at all. But then goes on to say that this information, which he describes in that fashion, the records will assist, they should yield, and therefore further a Federal Bureau of Investigation information. It's for those reasons that I think that it is this kind of an approach to use of the statute, and I think misuse of the statute, to seek to obtain an order here instead of a search warrant if they had probable cause that requires this court's intervention to provide a rule which will guide future conduct, and therefore it is distinguishable from Warshak. It is the quality of information as well as its quantity here which also distinguishes it from the third-party record cases. It's for all of those reasons that I would request this court to reverse the decision of the district court in order that this information should not have been received in evidence and that my client should then therefore obtain a new trial. Very well. Thank you. Thank you. Mr. Gurwitz, we're aware that you represented your client under the Criminal Justice Act, and I do want to say that I think your advocacy in this case, both in your brief and here today, is a great credit to the Act. You did a superb job, and the briefing by all three of you in the argument, speaking for myself at least, was exemplary. We appreciate it. Good job. Case will be submitted. Clerk may call the next case.